**SO ORDERED.**

**SIGNED September 28, 2006.**



_____
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE
_____

```
              UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF LOUISIANA

IN RE:

JERRY BERT HODGEN
BOBBIE SUE HODGEN                          CASE NO. 04-21020

     Debtors                               Chapter 7
-----------------------------------------------------------------
BRYAN F. GILL, JR., TRUSTEE
     Plaintiff

VERSUS                               ADVERSARY NUMBER. 05-2056

JERRY BERT HODGEN
BOBBIE SUE HODGEN
     Defendants
-----------------------------------------------------------------
BRYAN F. GILL, JR., TRUSTEE
     Plaintiff

VERSUS                               ADVERSARY NUMBER. 06-2004

JERRY BERT HODGEN,
BOBBIE SUE HODGEN and
BRENT JAMES BOUDREAUX
     Defendants
-----------------------------------------------------------------
               REASONS FOR DECISION
-----------------------------------------------------------------
```

Jerry Bert Hodgen and Bobbie Sue Hodgen ("Debtors") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code[1] on August 12, 2004, and on that day an order for relief was duly entered. Bryan F. Gill, Jr. ("Trustee") is the duly qualified and appointed trustee. The Debtors' discharge was issued on December 7, 2004. The Trustee has filed two complaints, the first to revoke the Debtors' discharge pursuant to section 727(d), and the second seeking a declaratory judgment regarding the Debtors' ownership of certain property.

## JURISDICTION

The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

---

[1] Title 11, United States Code. References to sections of the Bankruptcy Code are shown as "section ____."

Page 2

**FACTUAL BACKGROUND**

In December of 1989, the Debtors acquired by cash sale certain immovable property located in Calcasieu Parish. Some time thereafter, the Debtors purchased a mobile home which was placed upon the property and used as their principal residence.

On April 1, 2003, the Debtors executed an Act of Donation ("2003 Donation") whereby they transferred the land and mobile home to Brent James Boudreaux. Although Mr. Boudreaux is not related to the Debtors, he moved in with them when he was a teenager; the Debtors have always considered him to be an unofficial adopted child.

Mrs. Hodgen testified that they transferred the property to Mr. Boudreaux because they owed him money and he needed to make a loan to pay bond for a DWI charge.

Mr. Boudreaux testified that the property was transferred to him because the Debtors owed him approximately $70,000. He indicated that he had co-signed for a credit card which the Debtors used in their businesses and that the credit card company was seeking collection from him. Mr. Boudreaux further testified that the transfer had nothing to do with any criminal charges or proceedings. He indicated that the intent was for him to borrow funds and use the property as collateral in order to pay off the credit card debt. He never executed any loan documents. He

Page 3

testified that he made a few phone calls to loan officers and was told that the property could not be used as collateral as there was a mobile home involved. The title to the mobile home was never transferred to him, he never resided on the property after the transfer, he never collected rent from the Debtors, and he never paid property taxes nor insurance on the property.

After the Debtors received their discharge on December 7, 2004, Mr. Boudreaux ostensibly transferred the property back to the Debtors by Act of Donation dated February 14, 2005 ("2005 Donation"). Mrs. Hodgen testified that Mr. Boudreaux transferred the property back to him because he had not paid the property tax on the property. Mr. Boudreaux, however, testified that he did not execute that 2005 Donation and that the signature on that document was not his nor was it made with his consent. Leticia Welsh, the notary who executed both the 2003 and 2005 Donations, testified that she did not witness Mr. Boudreaux's signature on the 2005 Donation.

Mr. Boudreax testified that he was not aware of any intent of the Debtors to file bankruptcy at the time of the execution of the 2003 Donation, but he did become of aware of that intent several months after that transfer.

Also after the Debtors received their discharge, they obtained a loan and granted a mortgage in favor of First Fidelity Mortgage,

Page 4

Inc. d/b/a Southern Funding, dated February 11, 2005. This date is several days before the purported execution of the 2005 Donation. Mr. Bobby Fralick, the loan officer with Southern Funding who took the application of the Debtors, testified that when they discovered that the property was not owned by the Debtors, he called Mrs. Hodgen and inquired as to this issue. According to Mr. Fralick, Mrs. Hodgen stated that the property was transferred out of their name before the bankruptcy and had simply not been transferred back now that they were out of bankruptcy.

The Debtors previously operated a business called Pretty Woman. The business was incorporated under the name Pretty Woman, Inc. On July 1, 2003, the Debtors and Pretty Woman, Inc., sold all of the equipment involved in the business to the Debtors' daughter, Jeri Michelle Trahan for the sum of $15,000. Mrs. Trahan then began operating the business. Mrs. Hodgen testified that she often worked in the business to help her daughter. She sometimes worked for free and sometimes was paid in cash.

On August 23, 2000, Mrs. Hodgen transferred two horses, Bouncy Cadillac Style and Bandy Jones, to her daughter Mrs. Trahan for the stated sum of $1,000.00 in cash. Since that transfer, the horses remained in the Debtors' possession.

On September 14, 2003, almost a year before the bankruptcy filing, the Debtors issued a check to Max M. Morris, the attorney

Page 5

who filed their bankruptcy proceeding. Mrs. Hodgen testified that they did not consult with Mr. Morris that far in advance of the filing and she does not know why she would have issued that payment to Mr. Morris.

## LAW AND ANALYSIS

### AVOIDANCE OF TRANSFER (ADVERSARY NUMBER 06-2004)

The Trustee seeks to set aside the transfer which occurred by virtue of the 2003 Donation. The Trustee alleges that the transfer should be considered a nullity pursuant to both the Louisiana Fraudulent Transfer Act and the Louisiana Revocatory Act. The Trustee asserts that the transfer was merely a sham and that the property should be considered property of the estate.

Pursuant to section 544, the Trustee is empowered to proceed to utilize state and other non-bankruptcy federal laws to avoid transfers of property. On the date of the filing of the bankruptcy petition, the statute known as the Louisiana Fraudulent Transfer Act was still in effect. That act has now been repealed. Although the act was in effect at the time of the bankruptcy filing, it was not in effect when the transfer occurred. As such, the court does not believe that the act applies.

The Trustee also seeks to avoid the transfer evidenced by the 2003 Donation pursuant to the Louisiana Revocatory Act. Louisiana Civil Code Article 2036 provides that:

Page 6

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

The Trustee steps into the shoes of a creditor or obligee and is entitled to seek annulment of the transfer if the transfer caused or increased the Debtors' insolvency. Mrs. Hodgen conceded that at the time of the transfer, she and her husband had very little income and increasing debt. As the 2003 Donation transferred the only significant unencumbered asset from their estate, there is no question but that the transfer increased the Debtors' insolvency.

The evidence also suggests that the Trustee did not learn of the 2003 Donation until after the Trustee first learned of the 2005 Donation. It appears that the Trustee at that time began looking into the circumstances of that transfer. An action under the Louisiana Revocatory Act must be commenced—

> within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.

The court therefore finds that the Trustee's action was timely and the transfer evidenced by the 2003 Donation is annulled. The property at issue shall be considered property of the Debtors as of the date the bankruptcy petition was filed.

As the property was subsequently mortgaged by the Debtors such that the property is now no longer unencumbered, the Trustee seeks

Page 7

a judgment against the Debtors for the value of the property.  As the Debtors have, by encumbering the property, caused damage to the estate, the Trustee is entitled to judgment for the amount of that damage.  The court will award judgment against the Debtors for the amount of the mortgage placed on the property by the Debtors post-petition.

**REVOCATION OF DISCHARGE (ADVERSARY PROCEEDING 05-2056)**

The Trustee also seeks to revoke the Debtors' discharge pursuant to section 727(d), which provides that:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
> >
> > (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
> >
> > (3) the debtor committed an act specified in subsection (a)(6) of this section; or
> >
> > (4) the debtor has failed to explain satisfactorily--
> >
> > > (A) a material misstatement in an audit referred to in section 586(f) of title 28; or

Page 8

> (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

The Trustee alleges that the Debtors obtained their discharge by fraud as they transferred numerous items of property out of their name in sham transactions in an effort to keep the property of the hands beyond the reach of their creditors and the Trustee.

The Trustee focuses upon the donation to Mr. Boudreaux. The Trustee argues that the Debtors made the transfer in contemplation of bankruptcy and that they never intended to actually give the property to Mr. Boudreaux. Mrs. Hodgen testified at trial and stated that she and her husband never considered filing bankruptcy until shortly before their case was filed. She also testified that the donation to Mr. Boudreaux was a legitimate transfer based upon an obligation to Mr. Boudreaux and that the Debtors were not trying to remove assets from their name to keep it from their creditors and/or the Trustee.

The court has reviewed all evidence, including the testimony of Mrs. Hodgen and the numerous depositions submitted by the Trustee. The court finds that Mrs. Hodgen's testimony is in clear contradiction to substantial evidence from disinterested persons, and therefore lacks credibility.

The evidence clearly indicates that the Debtors transferred their assets to family members in contemplation of bankruptcy. The Debtors consulted with bankruptcy counsel at some around the time of the transfers and then waited at least one year from the date of the transfers in order to prevent the Trustee from seeking avoidance of them. Although Mrs. Hodgen testified that they did not consult with Mr. Morris until shortly before they filed their chapter 7 case, the fact that they issued a check to him almost a year prior to that time contradicts her testimony. Further, the fact that the Debtors never actually lost possession of any of the assets allegedly transferred to their children establishes that these transfers were not legitimate. As further evidence of this, the testimony reflects that the Debtors caused the immovable property to be transferred back to them. The court believes that the Debtors or someone acting on their behalf, forged Mr. Boudreaux's name on the 2005 Donation. The totality of the circumstances clearly establishes that the Debtors were attempting to hinder, delay and defraud their creditors by placing their property in the names of their children.

For the foregoing reasons, the court finds that the Debtors' discharge was obtained through fraud. As such, the Debtors' discharge entered on December 7, 2004, is revoked.

Within 20 days, counsel for the Trustee shall submit two separate orders addressing the adversary proceedings in conformity with the foregoing reasons.

###